UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-1631-GW-JCx | Date | May 3, 2022 |
|---|---|---|---|
| Title | *Maria Gutierrez, et al. v. FCA US, LLC, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON PLAINTIFFS' MOTION TO REMAND AND REQUEST FOR SANCTIONS UNDER 28 U.S.C.§ 1447(C) [21]

Attached hereto is the Court's Tentative Ruling on Plaintiffs' Motion to Remand [21], presently set for May 5, 2022 at 8:30 a.m. Counsel are to appear telephonically by contacting the court clerk at javier_gonzalez@cacd.uscourts.gov for dial-in instructions.

:

Initials of Preparer   JG

<u>*Gutierrez, et al. v. FCA US LLC, et al.*</u>, Case No. 2:22-CV-01631-GW-(JCx)
Tentative Ruling on Motion to Remand and Request for Sanctions Under 28 U.S.C. § 1447(c)

      The original Complaint in this case – filed on January 28, 2021 in Los Angeles County Superior Court and served upon defendant FCA US LLC ("FCA") on February 17, 2021, *see* Notice of Removal, Docket No. 1, ¶ 4 – contained seven causes of action, *including one for violation of the Magnuson-Moss Warranty Act*, 15 U.S.C. § 2301 et seq. ("MMWA"), a *federal* statute. *See* Complaint, Docket No. 1-2. FCA removed the case to this Court on March 11, 2022 – over a year after it had been served with the Complaint, and while *its own* summary judgment motion was pending in state court, *see* Docket No. 1-1, ¶¶ 8-13 – because, by that time, all of the state-law claims pled against FCA had been voluntarily-dismissed and, in FCA's view, for the first time the MMWA claim was "sufficiently central to" the claims of plaintiffs Maria Gutierrez, Jesus Gutierrez, and Jesus Gutierrez Jr. (collectively, "Plaintiffs") to give a federal court subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *See* Notice of Removal at 3:6-13, 3:26-27[1]; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. § 1441 ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). In its Notice of Removal, FCA asserted that its removal of this case was timely because less than 30 days had elapsed since Plaintiffs' voluntary dismissal of the state-law claims that they had originally pled against FCA. *See* Notice of Removal at 4:9-11. Therein, FCA cited a single case in support of its theory of removability/timeliness of removal – *Bay Shore Union Free School District v. Kain*, 485 F.3d 730 (2d Cir. 2007).

      On March 31, 2022, this Court issued an "Order to Show Cause re Probable Procedural Defect and Subject Matter Jurisdiction Issue" ("the OSC"). *See* Docket No. 16. In the OSC, the Court asked the parties to be prepared to discuss, via a telephonic hearing, "what appears to be an untimely removal of this action given the appearance of the [MMWA] claim in the original Complaint," among other things. *Id.*; *see also* 28 U.S.C. § 1446(b) (setting forth several measures

---

[1] The Notice of Removal contains two consecutive paragraphs numbered "5," and after an initial set of paragraphs numbered "6" and "7," a second set of paragraphs number "6" and "7." *See* Notice of Removal at 3:6-4:14. Citation to the page-and-line-number is used where necessary to avoid confusion.

1

of 30-day periods in which notices of removal are to be filed in order to be deemed timely); 28 U.S.C. § 1447(c) (requiring that a motion to remand based on "any defect other than lack of subject matter jurisdiction" to be made within 30 days after the filing of the notice of removal). On April 7, 2022 – the same day set for that telephonic hearing – Plaintiffs filed the instant motion to remand, and the Court consequently discharged the OSC. *See* Docket Nos. 21-22.

Plaintiffs' motion revealed that – unbeknownst to the Court at the time it issued the OSC – Plaintiffs' counsel had initiated a meet-and-confer pursuant to Rule 7-3 of this Court's Local Rules on March 23, 2022, raising, among other things, the issue of the timeliness of FCA's removal of the action. *See* Declaration of Daniel Law in Support of Plaintiffs' Motion to Remand and Request for Sanctions Under 28 U.S.C. § 1447(c), Docket No. 21-2, Exh. 1. Following issuance of the OSC and Plaintiffs' filing of their motion to remand – which seeks an award of attorneys' fees under 28 U.S.C. § 1447(c) – FCA filed an opposition to that motion repeating its theory that the MMWA claim present in the original Complaint that had been served upon it over a year prior was not "sufficiently central to" Plaintiffs' case until Plaintiffs' state-law causes of action pled against FCA were dismissed from the case. *See* Docket No. 24-1, 1:21-24, 2:22-24, 5:17-20. Again, FCA relied upon a single case in this regard – *Bay Shore*. *See id.* at 1:21-25, 5:17-21, 7:13-18. Obviously, a close review of *Bay Shore* is necessary to determine whether a Complaint filed in state court that, on its face, contains a cause of action for alleged violation of a federal statute, nevertheless does not present a basis for removal based upon 28 U.S.C. § 1331 because that cause of action is not "sufficiently central to" a plaintiff's case.

Two things must be said about *Bay Shore* that provide important background context in assessing the case and its application (if any) here. First, though it probably would not have made a difference in the Second Circuit's jurisdictional analysis, the case was not a removal case; it was filed directly in federal district court (following proceedings before a New York state agency). *See Lake v. Ohana Military Cmtys., LLC*, 14 F.4th 993, 1000 (9th Cir. 2021) ("Generally, a 'defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability.'") (quoting *Haw. ex rel. Louie v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014)). Second, the *Bay Shore* opinion never explicitly sets forth exactly what "causes of action" or "claims" were included in the Complaint originally-filed in federal district court, making it somewhat-difficult, from the outset, to apply to a case such as this with a federal cause of action pled on the face of the Complaint. Nonetheless, despite the opacity of the Second

2

Circuit's opinion in this regard, as the following discussion makes relatively clear, the Court can presume that the Complaint in *Bay Shore* presented a claim brought under the Individuals with Disabilities Education Act ("IDEA"), a federal statute.

*Bay Shore* involved a New York school district's challenge, in federal district court, of a New York Department of Education Review Officer's decision in favor of a student. *See* 485 F.3d at 731-32. From the outset of the opinion, the Second Circuit announced its conclusion that the district court had "improperly assumed jurisdiction over th[e] case." *Id.* at 732. The district court had "assumed jurisdiction was proper" because the IDEA provided "for concurrent state and federal jurisdiction over claims arising under its provisions," while at the same time acknowledging that *federal* law did *not* compel the school district to provide the services the state agency had awarded to the student in question and rejecting the school district's argument that *New York law* precluded those services. *Id.* at 733. Before the Second Circuit, the parties conceded that the IDEA *did not* require the services in question. *See id.*

The Second Circuit then explained that it was "not persuaded by [the parties'] argument that their dispute involves a federal question because IDEA incorporates the New York Education Law on which this case turns." *Id.* The parties in *Bay Shore* argued that the case was a "civil action[] arising under the . . . laws . . . of the United States" based upon their contention that the IDEA's standard for a Free Appropriate Public Education incorporated by reference all state standards, even if the state regulations exceed the minimum floor established by federal law. *See id.* at 734. The Second Circuit concluded that a federal statute is not a sufficient basis for federal question jurisdiction simply because it incorporates state law. *See id.* It also observed that the lawsuit filed in federal court did not "turn on the interpretation of federal law," but instead "entirely on a state-law issue." *Id.*

It is from this part of the Second Circuit's analysis where FCA selects its only quotation from *Bay Shore* in attempting to explain its reliance on that case:

> The *Bay Shore* Court determined federal jurisdiction was improper, stating that "the School District's suit does not turn on the interpretation of federal law . . . . The case turns entirely on a state law issue and as such it cannot form the basis of federal question jurisdiction." That is exactly the situation at hand[] here.

Docket No. 24-1, at 6:9-13 (quoting *Bay Shore*, 485 F.3d at 734) (omitting internal citation). To the contrary, that is *not* the situation here. Plaintiffs' MMWA claim plainly does not turn on a question of *state* law – the MMWA is a *federal* statute. If, as appears to be the case, *see, e.g.*,

3

Docket No. 24-1, at 6:13-7:10, FCA believed that Plaintiffs' MMWA claim was *flawed* and that their case could only have even a hope of proceeding/succeeding based on Plaintiffs' state law claims, that would not rob the MMWA claim of any *jurisdictional* impact it might have – it would only demonstrate that the MMWA claim was, or might be, deficient on the merits. The Court does not even need to touch upon FCA's seemingly-made-up "sufficiently central to" standard in order to make this point.

Returning to an assessment of *Bay Shore*, the Second Circuit also rejected the notion that "the IDEA's explicit authorization of a cause of action to be brought by 'any party aggrieved by the findings and decision' of the state educational agency *ipso facto* raise[s] a federal question that would confer jurisdiction in th[e] case on a federal court." *Id.* The court observed that a "narrow exception" to the traditional "arising under" rule – where "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law" – exists "where a formally federal cause of action does not create *ipso facto* a federal question 'because of the overwhelming predominance of state-law issues.'" *Id.* at 734-35. The Second Circuit reasoned that it "cannot discern a strong federal interest in adjudicating whether the School District must provide Ryan a one-to-one aide in the school of his choosing" and that "[t]he determination whether New York law compels the School District to provide the one-to-one aide at a parochial school is a question best left to New York courts." *Id.* at 735. Given that FCA has supplied only one quotation from *Bay Shore* in its argument relying on that case, this section of the Second Circuit's reasoning does not appear to be the basis for FCA's belief in the timeliness of its removal here. Certainly, it may again be said that there is not an "overwhelming predominance of state-law issues" in Plaintiffs' MMWA claim, and there is absolutely no basis to conclude that Plaintiffs' MMWA claim – which the statute itself says may be brought in both state and federal courts, *see* 15 U.S.C. § 2310(d)(1) – presents questions that are "best left to [California] courts."

Finally, the Second Circuit rejected the suggestion that federal question jurisdiction could be based solely on the existence of IDEA's jurisdictional provision, which might be taken to "suggest[] that IDEA might provide an independent basis for subject matter jurisdiction of the federal courts whereby any issue raised in the hearing may be reviewed, even if it concerns exclusively a matter of state law." *Id.* at 735-36. The court "decline[d] . . . to construe [the jurisdictional provision in question] to permit an issue of state law to be challenged in federal court

4

independent of a federal question." *Id.* at 736. Clearly, the type of jurisdictional provision present in the IDEA, used for review of stage agency proceedings, has no counterpart in the MMWA, involving no review of any prior agency proceeding at all. *Bay Shore* is obviously not instructive in this regard.

In sum, there is no question of the MMWA incorporating state law, as was one of the arguments in *Bay Shore*. As explained above, there is also zero support for the conclusion that Plaintiffs' MMWA claim would turn on state law, let alone exclusively on state law. *Bay Shore* did not involve the MMWA, but instead the IDEA. The IDEA presents a peculiar jurisdictional provision having no counterpart in the MMWA. Perhaps most-glaringly, *Bay Shore* never once used the term "central" or the phrases "central to" or "sufficiently central to." Beyond even that, the Ninth Circuit has never cited to *Bay Shore*, even if FCA's skewed application of that case made sense.[2]

Because *Bay Shore* provides no support whatsoever for FCA's apparent belief that its removal could possibly have been timely here, the Court will grant Plaintiffs' motion based upon FCA's untimely removal, a procedural defect. As such, the Court has no need to consider the other topic mentioned in the OSC and Plaintiffs' motion – whether or not FCA (which did not address the issue at all in its Notice of Removal) had pled/demonstrated a sufficient amount-in-controversy for federal jurisdiction based upon an MMWA claim.[3]

---

[2] Only two district court decisions within the Ninth Circuit have cited *Bay Shore*'s jurisdictional determination, with one merely calling the decision a "wrinkle" in the observation that state standards are part of the IDEA analysis, and are enforceable in federal court when not inconsistent with federal standards under the IDEA, *see Poway Unified Sch. Dist. v. Cheng ex rel. Cheng*, 821 F.Supp.2d 1197, 1200 & n.3 (S.D. Cal. 2011), and the other simply providing a citation to *Bay Shore* as a "but see" related to that district court's quotation from – in the course of denying a motion to remand – IDEA's jurisdictional/private right of action provision, *see Douglas v. Director, Cal. Office of Admin. Hearings*, No. C-13-05306-RMW, 2014 WL 595868, *2 (N.D. Cal. Feb. 14, 2014). Jurisdictional peculiarities of the IDEA are obviously far beyond the scope of what the Court has reason to consider or resolve here.

[3] After not having addressed the amount-in-controversy issue at all in its Notice of Removal, FCA attempted to demonstrate a sufficient amount in its Opposition brief by relying on a copy of Plaintiffs' sales contract, which it asserts it received through discovery, along with an estimated calculation of Plaintiffs' attorneys' fees. *See* Docket No. 24-1, at 2:25-26, 3:20-27, 4:6-9, 8:14-19, 10:6-13. FCA filed a summary judgment motion in state court based, at least in part, upon information it learned from the sales contract. *See id.* at 3:1-6. It filed that motion for summary judgment on December 8, 2021, *see* Docket No. 1-1, ¶ 8, meaning that it had the information necessary to make the calculation it has now belatedly offered much earlier than 30 days before its March 11, 2022, removal in this case. Therefore, even if FCA could make an argument – it has not – that the original Complaint did not reveal a basis for removal because it contained no information reflecting a sufficient amount-in-controversy under the MMWA, FCA certainly became aware of that amount at a time that makes its removal improper under 28 U.S.C. § 1446(b).

Plaintiffs ask the Court to award them costs, expenses and attorneys' fees. The request is well-taken.

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). It is not necessary to show that the removing party's position was "frivolous, unreasonable or without foundation." *Id.* at 138.

FCA did not have an "objectively reasonable basis" for removing this case over a year after it had been served with a Complaint containing a cause of action based on violation of a federal statute. This entire exercise was a waste of the Court's and Plaintiffs' time and resources, all flowing from FCA's decision to remove. Again, the Complaint in this action contained a cause of action for violation of a federal statute. This is the quintessential, and most straight-forward, basis for federal subject matter jurisdiction under 28 U.S.C. § 1331. *See, e.g.*, *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("The 'vast majority' of cases that come within this grant of jurisdiction are covered by Justice Holmes' statement that a 'suit arises under the law that creates the cause of action.'") (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9-10 (1983) and *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908)). Both Plaintiffs – through their meet-and-confer efforts – and the Court – through the OSC – attempted to guide FCA towards the light, but FCA stood fast.

What did FCA rely upon as support? A single (out-of-Circuit) case that, even if you squinted most-severely, you could not see the slightest pinprick of light from a supporting shred. As the foregoing discussion of *Bay Shore* makes clear, FCA has not presented the Court with a single case – either in its Notice of Removal or in its Opposition to Plaintiffs' remand motion – that supports its view that a Complaint filed in state court that, on its face, contains a cause of action for violation of a federal statute, nevertheless does *not* present a basis for removal based upon 28 U.S.C. § 1331 because that cause of action is not "sufficiently central to" a plaintiff's case. Importantly, we do not deal here with the difficult-to-succinctly-define situation where there is a question whether a claim based, at least nominally, upon state law nevertheless raises an important, substantial federal question, where one might envision FCA's seemingly-made-up "sufficiently central to" standard having some slightest chance at life. Here, the Complaint

6

included a claim based upon violation of – indeed, the substantive terms of – a federal statute. Even if *Bay Shore* could be relied upon in exceedingly-limited situations involving the IDEA and its provision for review of underlying state agency decisions in either state or federal court, this case does not involve the IDEA and there is no basis – certainly no demonstrated basis – to conclude that the MMWA and IDEA are at all analogous insofar as jurisdictional issues are concerned.[4]

The only question here that might reasonably be discussed at oral argument is whether any award of costs and fees should be entered only against FCA and its counsel, jointly-and-severally, or whether FCA's co-defendant should be made party to that award as well. *See also Pack v. Hoge Fenton Jones & Appel, Inc.*, Nos. 12-CV-4512-SC, 12-CV-4513-SC, 2013 WL 140027, *7 (N.D. Cal. Jan. 10, 2013) (observing that "[d]istrict courts are divided on the issue" of "who should pay under 28 U.S.C. § 1447(c)," while ultimately concluding that *only the client* should pay because "the American rule" creates a presumption that parties bear their own legal cost, win or lose). FCA's co-defendant, Champion Dodge, LLC, d/b/a Champion Chrysler Jeep Dodge Ram Fiat, represented by the same counsel as FCA, consented to FCA's removal, *see* Docket No. 1-29, dragged along this path despite the fact that the only claim pled against it was a state-law claim for negligent repair. Nevertheless, it *consented* – apparently without seeking independent legal advice – to this bizarre sidetrack (a course that, again, only had the effect of further delaying FCA's *own pending summary judgment motion* in state court). FCA required this consent in order to meet another one of the procedural requirements for removal. *See* 28 U.S.C. § 1446(b)(2)(A).

The Court orders Plaintiffs to present it, by May 16, 2022, with information reflecting what costs and fees it incurred as a result of FCA's removal. The Court will finalize its order remanding this case following its consideration of Plaintiffs' submission.

---

[4] Although FCA has not had an opportunity to respond (because Plaintiffs first-mentioned it in their Reply brief), Plaintiffs have provided the Court with material demonstrating that least one of FCA's three lawyers in this action took a position – within the past few years – fundamentally-inconsistent with FCA's present argument while removing (also on FCA's behalf) a different case to the Central District of California less than 30 days after the complaint had been filed in that case on September 30, 2019, because – among other expressed bases for removal – the complaint contained an MMWA claim. *See* Plaintiff's Request for Judicial Notice in Support of Plaintiffs' Motion to Remand, Docket No. 26, Exh. A. The Court does not rely upon – indeed, has no need to rely upon – this seemingly-inexplicable inconsistency in deciding that an award under Section 1447(c) is well-warranted here. But this fact, if true, certainly does not help FCA's or its counsel's position in this regard.